# Perry *versus* Lowber *et al.*

*Creation of life estate by devise.—Enlargement of life estate to fee simple by devise.*

1. A devise by a testator of one seventh part of his estate to trustees in fee simple in trust for a daughter for her life, and after her decease to convey to her children (if she should marry and have children) and the issue of any of her deceased children, to be equally divided among them as tenants in common and not as joint tenants, but all the issue of a deceased child to take only the share and proportion to which the parent would be entitled if surviving the mother: vests in the daughter only an equitable life estate: and it is not enlarged to a fee simple by an antecedent clause of the will— "In trust nevertheless for the use and benefit of my daughter, her heirs and assigns, * * * to have and enjoy the rents, issues, profits, income, and interest of the said seventh part for and during her natural life, and after her decease" to sell, convey, &c.

2. The will of the daughter, disposing of her seventh portion of the estate, as if seised in fee simple, could have no effect, except so far as her children should elect to take under it, as they were entitled to that portion of their grandfather's estate as devisees in remainder under his will.

[Perry *v.* Lowber *et al.*]

CERTIFIED from the Supreme Court at *Nisi Prius*.

This case was commenced by a bill in equity by Fanny Perry against Henry Lowber, trustee under the will of Richard Bache, deceased, E. Spencer Miller, executor of Sarah Sergeant, deceased, and Thomas Sergeant.

The bill set forth the will of Richard Bache, proved in 1811, under which, complainant claimed that at the death of her mother, the said Sarah Sergeant (who was a daughter of Richard Bache), complainant and her brother Thomas Sergeant (who was made one of the defendants), became entitled in equity to one seventh part of her said grandfather's estate; and prayed that her mother's executor may be required to replace so much of said one-seventh as Mrs. Sergeant disposed of during her lifetime (viz., twenty-four shares of insurance stock which she sold, applying the proceeds towards the purchase of a house on Clinton street, which by her will she devised to her son, the said Thomas Sergeant), and that he may be restrained from selling or interfering with so much of the said seventh as remained at the time of her death, but which she assumed to dispose of by her will.

The answers admitted the facts set forth in the bill, but denied that complainant or her said brother had any rights under the said will of Richard Bache, but on the contrary averred that the entire interest in the property, real and personal, thereby devised and bequeathed, was vested in the said Sarah Sergeant.

The material facts of the case were these :—

Mrs. Sarah Sergeant, the mother of the complainant and of the defendant, Thomas Sergeant, and the widow of the late Hon. Thomas Sergeant, was the daughter of Richard Bache, who died in 1811, leaving a will dated January 2d 1810. Mrs. Sergeant was the youngest child of her father, and at the time of his death was about twenty-two years of age. She was unmarried, and did not contemplate marriage.

The testator had seven children, one of whom had died in his lifetime, leaving children.

By his will he divided his estate into seven equal parts, of which he gave one to the children of his deceased child, one to his son Louis Bache, his heirs and assigns, one to his son Richard Bache, his heirs and assigns, one to his daughter Deborah Duane, her heirs and assigns, one in trust for his son "William Bache and Catharine his wife, *and their children*," in manner following, viz., "to them for life, with remainder to their children," &c., one to his daughter "Mrs. Harewood *and her children*, in manner following," viz., to her for life, with remainder to her children, &c., and the seventh share to be disposed of as follows :

"I give, devise, and bequeath unto the said David Lennox, Louis Bache, and Richard Bache, and the survivors and survivor

of them, and the heirs and assigns of such survivor, the remaining one seventh part or share of all my estate, real, personal, and mixed; the same being divided as aforesaid, to have and to hold the same unto them, and the survivors and survivor of them, and the heirs and assigns of such survivor for ever, in trust nevertheless for the use and benefit of my daughter Sarah Bache, her heirs and assigns, in manner following: that is to say, to permit my said daughter Sarah Bache to have and enjoy the rents, issues, profits, income, and interest of the said last-mentioned one full seventh part or share of the premises, for and during her natural life, and after her decease, to convey, transfer, and deliver the said last-mentioned one full seventh part or share of the premises to her children (if she should marry and have children), and the issue of any of her deceased children, to be equally divided among them as tenants in common, and not as joint tenants; but all the issue of a deceased child shall only take the share and proportion to which their parents would have been entitled had he or she survived the said Sarah Bache, and no more. And if my said daughter Sarah should die without leaving any child or children, or the issue of a deceased child or children, then in trust to convey, transfer, and deliver the said last-mentioned one full seventh part or share of the premises to such person or persons, and for such estate or estates as my said daughter Sarah Bache shall, in and by her last will and testament, direct and appoint. And I do authorize and empower the said trustees to sell and dispose of the real estate included in this last-mentioned trust, and to convert the same into personal estate for the same uses, and to sell and dispose of the personal estate, and to invest the same in real estate for the same uses, from time to time, and as often as the same shall be deemed expedient and beneficial for the purposes of this last-mentioned trust."

The trustees named in the will having died, Mr. Lowber was recently appointed in their place, in order that the rights of the parties respectively might be fully passed upon by the court.

The complainant and Thomas Sergeant, one of the defendants, are the only children who survived Mrs. Sergeant—a third child, Henry J. Sergeant, having died unmarried and without issue in the lifetime of his mother.

The complainant, as already stated, denied the right of her mother to dispose of the property devised under the will of the said Richard Bache, alleging that she had a mere life estate therein, with remainder to her children, viz., complainant and her brother, and filed her bill accordingly.

The question presented by the bill and answer is, "What estate did Sarah Bache take in the seventh of the estate of Richard Bache, devised by him in the manner stated?"

[Perry *v.* Lowber *et al.*]

The case was presented in the court below on bill and answers, and his Honour Judge Read, in order that the question might the more readily and conveniently come before the court in banc, suggested that argument before him had better be dispensed with, and a decree, *pro forma*, entered for complainant, which was accordingly done as follows:—

"And now, this 29th day of December 1864, this cause came on to be heard upon bill and answers, and was argued by counsel; whereupon, on consideration thereof, the court are of the opinion that Sarah Sergeant, mentioned in the pleadings, was entitled to an estate for her life, and to no other or greater estate in and to the subjects of the trust created under the will of her father, Richard Bache, with remainder in fee simple to the complainant and the said defendant, Thomas Sergeant; and that the complainant and the said defendant are entitled to a conveyance of the legal estate therein from the defendant, Henry S. Lowber, trustee under the said will. Whereupon it is ordered that the defendant, Henry S. Lowber, do forthwith convey to the complainant and the defendant, Thomas Sergeant, and their heirs as tenants in common, the four several lots or pieces of ground referred to in the pleadings as S. B. Nos. 2, 10, 16, and 27, and that the defendant, E. Spencer Miller, executor of the said Sarah Sergeant, deceased, be perpetually enjoined from selling, or attempting to sell, the said premises under pretence of any power or authority so to do under the last will and testament of the said Sarah Sergeant, or collecting the rents and profits thereof, or in any manner interfering or intermeddling therewith.

"And as to and concerning the twenty-four shares of stock of the American Fire Insurance Company, sold by the said Sarah Sergeant in her lifetime, the complainant declaring her election to receive the proceeds of sale thereof, with interest thereon from the death of the said Sarah Sergeant, it is ordered that the defendant, E. Spencer Miller, do pay to the complainant, out of the personal estate of his testatrix, a moiety of the sum of two thousand and thirty-seven dollars, together with interest thereon from the 5th day of October 1863, and if the personal estate of the said testatrix shall not be sufficient to pay the said sum, it appearing to the court that of the said proceeds of sale, the sum of $1000 was invested by the said testatrix in the purchase of the said premises, No. 922 Clinton street, which she devised to her son the defendant, Thomas Sergeant, in fee, it is ordered that the said sum of $1000, with interest as aforesaid, or so much thereof as shall be required to make up the moiety to which the said complainant is so entitled as aforesaid, be and remain a lien and charge on the said last-mentioned premises in her favour, and that the defendant, E. Spencer Miller, do forth-

[Perry *v.* Lowber *et al.*]

with proceed to sell the said premises for the payment of the said lien and charge.

" And as to and concerning so much of the moiety of the said sum of two thousand and thirty-seven dollars, with interest as aforesaid, as the proceeds of sale of the said premises, after deducting the necessary and proper expenses, shall be insufficient to pay and discharge, it is ordered and decreed that the complainant be entitled to claim and receive the same as a creditor of the estate of the said Sarah Sergeant, deceased.

" And as to and concerning the other moiety of and in the said sum of two thousand and thirty-seven dollars, the defendant, Thomas Sergeant, electing to retain the real estate devised to him by the will of the said Sarah Sergeant, it is thereupon considered that the said defendant is not entitled to claim from the estate of the said testatrix, any sum whatsoever on the footing of this decree.

" And it further appearing to the court, since the pleadings in this case were filed, that the balance of the said sum of two thousand and thirty seven dollars remaining after the said investment of $1000 thereof in the purchase of the said premises on Clinton street, was invested in the purchase of the premises at Chelten Hills, called ' The Bird's Nest,' which were also devised to the said Thomas Sergeant; and that the said last-mentioned premises have been lately sold by him, and the proceeds of such sale received by him, the said defendant, it is thereupon ordered that if this claim of the complainant, as hereinbefore established, shall not be fully paid and satisfied out of the personal estate of the said testatrix, or out of the proceeds of sale of the said premises on Clinton street, she, the said complainant, shall be and she is hereby declared to be entitled to claim and receive so much as shall so remain unpaid from the proper estate of the defendant, Thomas Sergeant, not exceeding, however, the aggregate of the proceeds of sale of the said premises.

" And it is ordered that all the costs in this cause be paid by the defendant, E. Spencer Miller, out of any moneys in his hands as executor of the said testatrix.

" And it is further ordered that any of the parties to this cause be at liberty to apply to the court for further instructions as to carrying this decree into execution, should occasion arise for so doing."

From this decree Mr. Miller, Mrs. Sergeant's executor, took this appeal, averring that the learned judge at Nisi Prius erred in not dismissing the complainant's bill of complaint, and in making the decree aforesaid.

*Clement B. Penrose,* for appellant, argued:—1. The course of devolution, or "manner" in which the testator indicates that

the estate, given by him to his daughter, her heirs and assigns, shall be transmitted, differing in no respect (except so far as concerns the right of alienation) from what such course would have been had he said nothing, the indication or expression of such manner (his daughter being the only object of his bounty in existence at the time) can only be regarded as evidence of an intention which cannot prevail against the rules of law, viz.: that the estate to her heirs and assigns should be inalienable during her life.

2. That we come to the same result if we consider the devise as falling under the rule in Shelley's Case (the modern reasons for which are a corollary of two fundamental maxims of the law), and treat it as a devise to testator's daughter, of an equitable estate for life, with remainder to her heirs, viz.: 1. To her lineal descendants, or in their absence, 2. To her other heirs.

That the result arrived at, which in either case is the same, is the proper construction of this devise, is shown by the following reasons :—

1. That a comparison of this with other parts of the testator's will shows that he used the words "heirs and assigns" designedly, and in a different sense from "children," &c.

2. That if Sarah Bache is held to have a mere life estate, the words "heirs and assigns" must be stricken out as meaningless.

3. That if her estate is merely for life, there would be an intestacy if she failed to make a will, in the event either of her not marrying, or of her not having children, or of there being no child or issue of a deceased child in being at the time of her death.

4. That there was no "child," &c., in being at the time of testator's death: Doe *v.* Davies, 4 B. & Ad. 43; and the words used, viz.: "to her children (if she should marry and have children), and the issue of any of her deceased children," and "if she should die without leaving any child or children, or the issue of a deceased child or children, then" to her appointees by will, describe neither individuals nor a single class, but "evidently an entire line of succession:" Haldeman *v.* Haldeman, 4 Wright 29.

5. If the words "children or issue of a deceased child" are words of purchase, such issue would take by purchase the share which their parent "would have taken" had he or she survived the said Sarah Bache; and in such event would take *per capita*. For example, if Henry Sergeant, who died in his mother's lifetime, had left two children and sixteen grandchildren (the issue of deceased children), the third which he would have had must be divided into eighteen parts—his children taking only an equal share with the grandchildren: Leigh *v.* Norbury, 13 Ves. 338.

It is not to be presumed that such was the testator's intention. See Smith on Ex. Int., §§ 510, 511, 512.

6. The gift being to Sarah Bache, her heirs and assigns, and these latter words being at least operative in the event of her not marrying and not exercising the power of appointment if the children and issue, &c., are to take as purchasers, and thus reduce her fee to a mere life estate, there would be a manifest inducement to her to remain single. Such construction makes the devise in restraint of marriage. The presumption, therefore, is against it: 2 Cruise, tit. xiii., ch. 1, § 61.

This case is wholly different from the cases of Guthrie's Appeal, 1 Wright 9, Chew's Appeal, Id. 24, Lantz v. Trusler, Id. 482, which will probably be cited by the complainant. In none of these was the estate in the first instance given to the first taker, "her heirs and assigns." In all of them there were children, or the issue of a deceased child, in being when the will was made. The words describing the persons who were to take in remainder were much narrower in their meaning, and there were words of superadded limitation which are not found here.

As to the cases of Harris v. McElroy, 9 Wright 216, and Ralston v. Waln, 8 Id. 279, should they be cited, it is sufficient to say, that they were cases of gifts by deed, in which of course no words but "heirs" or "heirs of the body" can be words of limitation.

The inheritance here, unless it was in the testator's daughter Sarah, was in abeyance when the devise took effect, and we submit that it would be in abeyance during her whole life; for until her death it would be impossible to say whether the persons who are to take would be the children or the issue of a deceased child (for the will says such issue are to take not the share of their parent, but the share which their parent would have had if he or she had survived), or the appointees of the first taker. Similar words to which were said, by his Honour Judge Read, in Harris v. McElroy, 9 Wright 216, to confer a contingent interest only during the life of the first taker.

The case of Haldeman v. Haldeman, 4 Wright 28, much more nearly resembles the present one.

There the income was given during the life of testator's unmarried daughter, and after her death, then to descend and go to the child, and if children, share and share alike. If she should die and leave no lawful issue, then her share to fall into the residuary estate. It was held that the daughter was entitled to an estate tail, enlarged by Act of 1855 to a fee. It was admitted that in the case of a " gift for life, remainder to children, and in default of issue of tenant for life, over," the words " in default," &c., are referable to the designated objects of the last limitation, i. e., the " children" (Hayes on Estate Tail, *29,

30), but the decision was put on the ground that it appeared by the whole will, that the word " children" was " evidently intended to define an entire line of succession."

In our case it clearly appears that the words used are equally extensive; and we have, besides, the gift to the "heirs and assigns" of the first taker, in so many words.

In the interpretation of this will, the testator's daughter is to be considered as still unmarried. She is Sarah Bache, not Mrs. Sergeant. The events which have taken place since the testator's death cannot, of course, aid us in reaching his intention at the time of the execution of the instrument, and we are to view the circumstances precisely as they then were.

Still less are we to be affected by the character of the will which Mrs. Sergeant has made; whether it is in accordance with our views of what it should be, or whether her selection of objects for the bestowal of her charities has been judicious or otherwise, is wholly irrelevant to the question before the court, and we must take care, therefore, lest any seeming case of hardship should divert attention from the true point, and lead to one of those "bad precedents" which such cases are proverbial for giving rise to.

*Henry Wharton* and *William Henry Rawle*, for appellee.— The argument for the appellant is an attempt to revive the theory which, suddenly developed in Williams *v.* Leech, 4 Casey 89, and Price *v.* Taylor, Id. 95, was as suddenly exploded in Guthrie's Appeal, 1 Wright 9, viz.: that as in England, a gift to A. for life, remainder to his heirs, differs only in words from a gift to A. and his heirs (for in either case A. is the stock of inheritance), so in Pennsylvania, a gift to A. for life, remainder to his children in fee (or to his children living at his death, and the issue of those then dead), should not differ from a gift to A. and his heirs, because under our Intestate Law his children or their issue are in fact his heirs.

The fallacy of this reasoning, in mere matter of logic, is plain on its face, for a man's children and their issue are not his heirs, but only some of his heirs. The substantial answer given in Guthrie's Appeal was twofold:—

1. If the fact were so, it would be immaterial, for the rule in Shelley's Case does not apply to designated persons, though they be in fact heirs. Thus, a gift to A. for life, remainder to his first, second, and other sons in tail successively, remainder to his daughters as tenants in common, remainder over (which would be exactly the course of descent of an estate tail in A.), does nevertheless not give him an estate tail, but only a life estate : Goodtitle *v.* Herring, 1 East 164; Guthrie's Appeal, 1 Wright 21.

2. But the fact is not so. The persons who would take, under the Intestate Law, as the "heirs" of A., are not necessarily the same as those who would take under a gift to A. for life, and after his death to his children, and the issue of those then dead. When they are identical it is by accident, for they refer to a different stock of descent.

In the present case, one-seventh of the testator's estate is given to trustees in trust for his daughter Sarah Bache, her heirs and assigns. This fulfils in general terms the testator's purpose of equal division—then comes the expression of the other intention, to give only a life interest, &c.,—"in manner following, that is to say," to permit her to receive the rents, &c., during her life (which gave her the legal estate), and after her decease, to convey and transfer the share to her children (if she should marry and have children, which she did), and the issue of any of her deceased children. This would give a vested estate in fee simple to the children respectively, as they came into being, subject only to be divested in case of their respective deaths leaving issue, which has not happened: Smith on Executory Interests, § 282; Chew's Appeal, 1 Wright 24. The words after her decease do not import any contingency: see Boraston's Case, 3 Coke 21 a; Chew's Appeal, ut supra; Hawkins on the Construction of Wills 237.

Lastly comes the provision, that if she should die without leaving any child, children, or the issue of a child or children, then in trust to convey, &c., to such persons as she should appoint by will.

Why is not all this perfectly valid as it stands? It certainly is plain enough.

The argument on the other side is, that these limitations do not differ in legal effect from the prior limitation to her heirs.

We answer, first, they do materially differ in order of descent or succession, as we have shown above. Second, the previous words "heirs and assigns," as qualified by the phrase "in manner following, namely," mean such "heirs and assigns" as are thereinafter spoken of, to wit: "children, or issue of deceased children" on the one hand, and on the other devisees who would be her "assigns." This is made still more clear by the express power to devise in case of her death without children or issue, which shows that the testator did not mean by the word "heirs" her heirs general. That the word "heirs," or "heirs of the body," may be by subsequent words explained to mean sons, daughters, or children, is one of the best established and most familiar exceptions to the rule in Shelley's Case: 2 Jarman on Wills 300; Lowe v. Davies, 2 Ld. Raym. 156, s. c. per nom. Law v. Davis, 2 Strange 849, 1 Barnardiston 238; Goodtitle v. Herring, 1 East 264; Smith on Executory Int. § 479. See also

Doe d. Woodall *v.* Woodall, 3 Com. B. 349 ; Jordan *v.* Adams, 9 Id. N. S. 483.

The whole case is clear and simple. The first apparent gift in fee to Sarah Bache is cut down by the subsequent words (which if there were a conflict would govern in a will), to an estate for life, with a gift by way of remainder in fee to her children, and the issue of any of those who might be dead at her decease.

At the time of Mrs. Sergeant's death she had two children : one the complainant, the other the defendant Thomas Sergeant. They now ask for the estate devised to them by their grandfather.

The relief prayed by the bill is twofold :—First. To have the real estate which was devised by the testator in trust for Mrs. Sergeant and her children, conveyed to the latter by the present trustee under his will. About the right to this there can be no doubt, as is above shown. The proper parties are before the court. The complainant and her brother are also the heirs at law of Mrs. Sergeant. Her legatees are represented by her executor, Mr. Miller, who having a power and trust for sale, is a sufficient party on their behalf under the present equity rules. There can be no objection to the decree in this respect.

Second. To have the personal estate of Mrs. Sergeant applied to repay the amount for which the twenty-four shares of stock of the American Fire Insurance Company were sold, with interest. At the time this stock was transferred, as alleged in the bill, the original trustees in whose name the stock stood were dead, and none others had then been appointed in their place. The transfer was effected under a power of attorney executed by herself, a copy of which is annexed to the bill, in which it was alleged that the trust was at an end, and that she was entitled to an absolute interest therein. Induced thereto by this allegation, the company permitted the transfer.

Mrs. Sergeant had no right thus to annihilate the interest of her children in this stock. Even if the remainder to them had been a contingent one it could not be destroyed by her, the subject being personal estate, and her interest therein only an equitable one : Ralston *v.* Waln, 8 Wright 279 ; Harris *v.* McElroy, 9 Id. 220 ; Hill on Trustees 522, and note.

The fact that the company would also be liable for permitting such a transfer, is not material. If we should sue them they would in turn recover back the like amount from Mrs. Sergeant's executor. To avoid circuity and expense this is the simpler and at the same time the fairest course, for the company was misled, and received no benefit from the breach of trust, while Mrs. Sergeant did. The complainant was therefore entitled, first, to a conveyance of the moiety of the real estate mentioned in the

[Perry *v.* Lowber *et al.*]

pleadings; second, to elect either to have replaced specifically the one-half of the twenty-four shares of stock, or to receive half of the proceeds of their sale, with interest from her mother's death; and, if necessary, she was entitled to ask that the Clinton street house (in whose purchase a part of such proceeds was invested), be sold by her mother's executor for that purpose.

The opinion of the court was delivered, May 15th 1865, by

READ, J.—The simple question in this case is, what estate did Mrs. Sergeant take under the will of her father Richard Bache, she leaving two children, the plaintiff and the defendant Thomas Sergeant? If only a life estate, then the decree below is right.

Richard Bache, by his will dated January 2d 1810, and proved on the 2d of August in the same year, gave to three trustees in fee simple a seventh part of his estate in trust for Sarah Bache, afterwards intermarried with Judge Sergeant, whom she survived.

The trust was for her life, and after her decease to convey the said seventh part to her children (if she should marry and have children) and the issue of any of her deceased children, to be equally divided among them as tenants in common, and not as joint tenants; but all the issue of a deceased child shall only take the share and proportion to which their parents would have been entitled, had he or she survived the said Sarah Bache, and no more. This undoubtedly would give Mrs. Sergeant only an equitable life estate. Then follows a provision which is inoperative under the circumstances, and which might for the purposes of the present case be stricken out of the will, giving her power, in case she left no children or issue as aforesaid, to appoint the said seventh part by her last will, or writing in nature of a last will, to such persons and for such estates as she should think proper. The trustees were given power to sell the said premises, and it is conceded that the whole legal estate in the same was vested in them. It is clear, also, from the examples given by the plaintiff's counsel, that this will under certain contingencies would produce different results as to the persons entitled to take from the Intestate Law, supposing Mrs. Sergeant to have had a fee simple, and to have died intestate.

The only argument against the construction giving only a life estate to Mrs. Sergeant, under the present rulings of the court, and which I do not think it necessary to repeat or discuss, is founded upon these words introductory of the clauses which have been mentioned: "In trust, nevertheless, for the use and benefit of my daughter Sarah Bache, her heirs and assigns, in manner following—that is to say—to my said daughter Sarah Bache, to have and enjoy the rents, issues, profits, income, and interest of the said last-mentioned one full seventh part or share

[Perry *v.* Lowber *et al.*]

of the premises *for and during her natural life, and after her decease.*" The trustees are then directed to convey to the children as before stated, or in case of the other contingencies to convey to her appointees by will.

It is clear, therefore, that these words have no effect in enlarging Mrs. Sergeant's life estate to a fee simple, when the will of her father directly and positively negatives any such intention on his part. Richard Bache intended Mrs. Sergeant's children and his grandchildren should have his property, and, therefore, Mrs. Sergeant in her lifetime could not legally convey more than her life interest, and her will so far as regarded this seventh had no operation, except so far as either of her children might elect to take under it.

As Mrs. Sergeant had only a life interest, Mrs. Perry takes directly under the will of her grandfather one-half of the one-seventh, and as the decree below was made on this assumption, and with a view to the special circumstances of the case, all we have to say is that

The decree is affirmed.